The next case is agenda number 2, case number 120011, People of the State of Illinois v. Willis Reese. Ellen, are you prepared? Annapolis, are you? You may proceed. Good morning, Chief Justice Carmeier, members of the Court. May it please the Court, my name is Annette Collins. I'm an Assistant State's Attorney from Cook County and I represent the people of the State of Illinois in the matter before this Court. We brought this case to this Court because the appellate court below, the majority of the appellate court, reversed the defendant's conviction for aggravated vehicular hijacking, despite the fact that the defendant in this case hijacked a hospital shuttle bus by placing a shank to the driver's throat, forcing him to drive. More specifically, the defendant in this case was an inmate in Cook County Jail who had just been found guilty of an unrelated contract murder. He was awaiting a life sentence or potentially facing a life sentence. He ostensibly sought medical treatment and the jail brought him to Stroger Hospital. However, this was a ruse because once at the hospital, he attacked his jail guard with a shank that he had brought from the prison. He also attacked another patient trying to get out of the hospital. He slashed at a nurse who tried to stop him. And once he made it outside the hospital, he found an awaiting shuttle bus that was simply driving passengers back and forth from a parking lot to the hospital. And he jumped through the open doors of that bus, put his shank to the driver's throat, and threatened to stab him if he didn't drive. Now on this evidence, he was found guilty of multiple offenses, including vehicular hijacking, aggravated vehicular hijacking. But the majority below reversed that conviction. And the reason given by the majority was that vehicular hijacking requires dispossession of the vehicle from the victim. In other words, because the defendant in this case didn't take the bus away from the driver, didn't remove the driver from the bus, that somehow the offense was not complete nor was it committed. It's our position that the lower court majority's opinion was far too narrowly drawn such that it rendered an absurd result. For instance, the very act of hijacking, putting a gun to somebody's head and forcing them to drive, is excluded from the reach of the statute according to the majority. This also excludes the most dangerous conduct from the reach of the vehicular hijacking statute when the victim is somehow still in the vehicle during the carjacking. It also leaves defendant's conduct unaddressed by any serious statute because it's not armed robbery. Armed robbery excludes vehicles from its reach. According to the majority, it's also not vehicular hijacking because there's no dispossession. And yet it's also not kidnapping or aggravated kidnapping because in Illinois our kidnapping statute requires the element of secret confinement. And it can hardly be said that this was secret when an offender in a vehicle or a bus in this case puts a shank to the driver's throat. So it was a mistake for the majority to wrongly read the aggravated vehicular hijacking statute as identical to the armed robbery statute, but that's what it did. And it did so because it believed that the two statutes that use similar language had to be construed identically. But this was a mistake because the vehicular hijacking statute may use similar language, but it's a different statute than armed robbery. It's not robbery or armed robbery of vehicles. The title obviously is vehicular hijacking. In fact, vehicles were removed from the reach of the armed robbery statute when the legislature in 1993 enacted this new statute. And it's significant that the title of the statute is hijacking. It's a well-known term braided with specific meaning, which our legislature has used in other contexts. And we've provided in our brief, for instance, in the death penalty statute where one of the aggravated factors was that there was a public conveyance that was hijacked during the murder. Doesn't this argument boil down to how the court defines takes? Yes. Yes, it does. But one of the other things that it boils down to, Justice Garmon, is armed robbery. The word takes in armed robbery has a specific meaning that's based on common law. In Strickland, which was the case, the armed robbery case that was relied on by the appellate court majority, this court in 1991 construed a case where the offender was charged with armed robbery and found guilty of armed robbery. And the basis of that charge was the offender's conduct of jumping into a vehicle, forcing the driver at gunpoint to drive the car. And eventually, I think they drove the car from Buffalo Road to Chicago. And eventually the victim was able to flag down a police car and the two defendants ran from the car. But this court said that that wasn't armed robbery because in order to commit a robbery taking, there has to be complete dispossession. The object has to actually be removed from the victim's possession. And the reason that this court said that is because robbery in Illinois has a common law base. And statutes in derogation of the common law have to be interpreted consistent with the common law. And the common law, the historical roots of armed robbery and robbery, have to involve complete dispossession. In fact, as far back as 1908, this court had said that there must be an actual severance of the property from the individual to constitute robbery, an armed robbery. These same common law roots that drove that analysis don't exist for vehicular hijacking. Vehicular hijacking is a crime of recent vintage. That's exactly what the legislature called it when they enacted it. And the legislature also looked to the federal carjacking statute when it enacted our vehicular hijacking statute. And the federal carjacking statute also uses the term taking. But as we've pointed out, federal carjacking also involves a situation where the victim can be in the vehicle and a carjacking can still occur, unlike with the majority held in this case. So is the term then is ambiguous? It's not our position. We don't believe the term is ambiguous at all. Our position is vehicular hijacking statute has to be read within its own context, within its own terms, and with its own purpose in mind. And the legislature may have used the term taking, but the legislature also focused only on vehicles. And thus, there's the implicit understanding that one can take a vehicle by hijacking. One can't hijack a wallet. One can take your wallet from you and completely dispossess you of it. But specifically, the meaning of the term hijacking is the very act that was committed here. Now, if the legislature had simply wanted to import all of the common law restrictions of robbery onto this new vehicular hijacking statute, they actually didn't even need to create a new offense. It was already covered, as this court had interpreted in the Strickland. Or if they had simply wanted to increase the punishment for the, quote-unquote, in the armed robbery statute. But they didn't do this either. And they certainly didn't create armed robbery or robbery of vehicles. They created vehicular hijacking at the same time removing vehicles from the reach of the robbery statute. That is a clear indication that the legislature viewed vehicles differently and viewed the taking of vehicles to encompass the act of hijacking as occurred in this case. When interpreting a statute, we have to consider the statute in its entirety, including its title, keeping in mind the subject that it addresses, and the intent of the legislature in enacting it. We also have to give terms their ordinary and accepted meaning unless there is a reason not to. And in this case, the hijacking or taking of a vehicle via a hijacking need not be beholden to the limitations of the common law because it is a new offense. That is the most rational interpretation of the statute in this case. It's true to the legislative intent and in accord with the majority of jurisdictions that have enacted this type of crime. And we would ask that this court, because of these reasons and those expressed in our brief, to reverse the appellate court's determination regarding the aggravated vehicular hijacking statute and its interpretation of that statute, but affirm everything else otherwise. Thank you. Thank you. Mr. Harris? Mr. Chief Justice, Your Honors, may it please the Court, I'm Assistant Appellate Defender David Harris on behalf of Mr. Reese. The State asks this Court to focus on the wrong term, hijacking, rather than the phrase takes from. And perhaps that's because in their briefs in this Court and in the appellate court, they've conceded that the phrase takes from has the same meaning in the robbery and the hijacking statutes. But the question for this Court is not to construe the title of the offense, but to interpret its elements. The legislature has already construed the title by defining it by those elements, and those are best understood through well-developed and consistently applied methods of analysis. The State wants this Court to brush aside those analytic tools, all the tools that favor Mr. Reese, and instead adopt its preferred layman's understanding of the title, hijacking. This Court should decline that invitation. There's not even a clear layman's understanding of the title. The dictionary on display in this Court's library down the hall defines hijacking as to stop in transit and take the cargo of, or to steal by stopping a vehicle in transit, carrying contraband. I think that definition arose out of the Prohibition Era. It refers specifically to illicit whiskey. So there's not even a subtle definition of the title, but the legislature has defined it by the elements. And the language, the history, and context of this law show that the acts done in this case do not constitute vehicular hijacking. As the State mentioned. Counsel, how do you address the appellate court dissent that talks about the defendant being less culpable for putting the victim in a more harrowing position, driving him or her around? Right, and I think the State mentioned that this is a type of absurd result that might result in a statute. That's not correct because this is still punished as a severe crime.  In fact, the defendant in Strickland remains convicted of aggravated kidnapping, while this Court reversed his vehicular hijacking conviction. And it's long been held, dating back to this Court's decision in 1953 in Bishop, that forcing someone to drive a car can be kidnapping, even though that would satisfy the secret confinement requirement. This Court has said that sometimes the best way to secretly confine someone is to hide them in plain sight. So the State, and the State charged, believes this is kidnapping. They charged kidnapping in this case. So earlier today, the State's attorney just now said this is not kidnapping, but they chose to charge it as kidnapping. They simply failed to convince the jury. So we shouldn't stretch a statute to fit something that doesn't fall within its elements to save the State from its failed prosecution. The element takes property from, out of well-understood meaning, it applied under the robbery statute, and it applied even to cars requiring physical dispossession. When the legislature created the vehicular hijacking statute, it lifted that exact phrase, takes property from, specified motor vehicles, and wrote the new statute, takes motor vehicles from the person or immediate presence of another. When this Court has construed specific statutory language, and the legislature re-employs that language, it's presumed they're aware of that construction, and it's presumed that they intend that same meaning. Not only did they use that construed language, they put it immediately next to the robbery statutes. And when the statutes addressing similar subject matter are close in the code and address similar subject matter, they should be construed harmoniously. Not only were they right next to each other, it's in the same article of the criminal code, Article 18, titled Robbery. So if we're going to look to titles and gain meaning from titles, the title of Article 18 shows an indication that the legislature intended this to be robbery of a car. They were simply seeking to punish this type of robbery more harshly than other robberies. Would the situation be different here if the defendant had grabbed the wheel of the bus after he ordered the guy to drive? That could be a different situation where the defendant actually takes physical control over the vehicle. But that did not happen in this case. But as this court has said, the phrase takes property from requires physical control, physical dispossession. Whether joint possession is enough for dispossession, I'm not sure. I don't know if the case in Illinois has addressed that. But there was not even any sort of joint possession here. There was just the bus driver remaining in physical control of the bus. So that's the key here, is that the bus driver was actually driving the bus? Yes, remaining in physical possession. And so these acts could be criminal. They still can be kidnapping or other crimes, but not vehicular hijacking. So lacking any authority under Illinois law to support the interpretation the state prefers, they asked this court to look to foreign jurisdictions, the federal law, not the state law, state decisions interpreting federal and state crimes. And those cases that the state sites in fact performed the same analysis were asking this court to do. They looked to their history of robbery precedent. And this is explicit in the federal case, state sites, the other court, that they're looking at the new federal carjacking law that came into effect a year or two before Illinois' law. And they looked to their history of treating robbery under federal law and federal precedent and said in federal court, under federal law, robbery includes not just possession, but dominion or control over the property. And that's made explicit in another federal case, Barule, a site about a state that quotes the jury instruction, which says the government need not prove that the defendant actually took the vehicle or the property. It just needs to show that he, and I quote, had control of the situation. And that's a far different history of robbery than in Illinois. But they were still looking to their robbery precedent to examine the new carjacking law. Same thing with the state cases. Duran out of California and Green out of Michigan looked to their history of interpreting their robbery statute to inform how to apply their new carjacking statute. And they held that under their robbery precedent. The taking was complete by dominion or control over the property. So they applied that to the carjacking. Here in Illinois, robbery is complete only by physical dispossession. And we're asking this court to apply that. That was applied in McCarter in 2011 by the appellate court. And the legislature has not seen fit to address that, indicating an acceptance of that interpretation. They haven't expanded the scope of the statute to include forced control. And the legislature knows how to do that. They've done that in the theft statute. It's defined as obtaining or exerting unauthorized control over property. So the legislature knows how to criminalize unauthorized control as opposed to possession. Here they chose the well-settled term, takes property from, and put it in the hijacking statute, intending the meaning of physical dispossession as explained as a settled meaning. And again, this was just to increase the penalties for this type of crime. I think there must have been a wave of these type of car robberies across the nation in the early 90s because the federal law, I believe, came into effect in 1992. Other states adopted carjacking statutes around the same time in Illinois in 1993. And the state says that the legislature, if they only wanted to increase penalties, could have simply made a subsection increasing the penalty where the property taken is a car. There's no presumption that this was something different because they created a new statute. The legislature has done this a lot with residential burglary. Burglary of a home used to be just fall under the burglary statute. And in, I believe, the early 80s, the legislature created residential burglary, created a new offense, and it was simply tightening the penalties for a certain type of burglary. And you could say the same about many aggravated or armed versions of offenses. They're not usually written as subsections of a criminal offense. They're new offenses given new titles, but they have the same meaning. And the state also suggested, even though the phrase takes property from it has the same meaning in both statutes, it means it still has a different application here because cars are unique in the way they can be forced to be controlled for someone else's benefit. But they're not unique in that way. An ATM card can be forced to be used to withdraw cash and hand over the cash. No one would say the defendant has taken the card, just the cash. Or in a bank robbery, you force someone to use a key to open the vault and steal the contents. If you haven't taken the key, you've taken the contents. Or even a different vehicle that's not covered as a motor vehicle, a boat, perhaps, would not fall under the statute even though you can force someone to control it to your benefit. So they're not unique in a way that would make the phrase takes from have a different meaning in 18-1 and 2 than it does in 18-3 and 4 under the robbery article. To stretch the statute here to fit Mr. Reese's acts would significantly depart from well-settled methods of analysis. And it would do so to amend the statute to fit not a common meaning, but the state's preferred layman's understanding of the title. This is not the way to develop a consistent and considered body of law, least of all in the criminal context where due process demands a heightened level of predictability. If the state wants the statute amended, it should ask the legislature. I know we have questions. Thank you. Ms. Collins, before I get started, I know there hasn't been, I don't think, a word spoken on the cross-relief, but there's six issues in cross-relief, two of which it seems like you agree with the defendant, right? The one act, one crime in the extended term, and then your position with respect to the others is you take the opposite view. I do, Your Honor. The appellate court below was a full court. The majority was the court that only found the vehicular hijacking statute interpretation that we disagree with. That was the dissent. But all three justices below rejected all the other claims, and we stand by those rulings. All right. Thank you. What defendant wants this court to do is ignore the legislatively chosen title of the offense, hijacking. Defense counsel got up here and talked about where the statute is in relation to the robbery statute. That's not a function of the legislature. That's the function of the publisher where he puts it. Likewise, where the statute is, the title of the section that the statute's in, that's also not a function of the legislature's choice in this case. And this court has said on multiple occasions that we're going to have to use that information as part of our statutory construction. When we have a particular statute that the legislature has entitled and has created that statute, not in derogation of the common law but taking it away from a common law offense, removed vehicles from the reach of a common law offense, we should not ascribe the narrow common law reading to this new statute, where the legislature intended this new statute, called it a new genre of crime and a crime of recent vintage. So the defendant's belief that this is just armed robbery of a vehicle is absolutely incorrect, and it's contradicted by exactly what the legislature did in the plain language and what the legislature said in its debates. What do you have to say about the McCarter case? The McCarter case was wrongly decided, Your Honor. It was wrongly decided just like the majority below. It was written by the same appellate justice and panel, and as a result, made the same mistake. And in fact, just because McCarter made this mistake does not necessarily mean that there's been tacit approval by the legislature. There's multiple other cases that we cited in our brief where there have been situations where hijacking has been charged, so vehicular hijacking, and the individual is still in the vehicle at the wheel, no less. And I think McCarter, if anything, proves up how dangerous the crime is when the victim still remains in the car, because if Justice Burke recalls, the victim in McCarter was actually killed behind the wheel, and his burned body was found in the vehicle. The other thing that I want to point out that I think is very significant for this argument is that defense counsel and the appellate court below appear to be deviating from Strickland and armed robbery, cherry-picking parts of the common law that they want to import into vehicular hijacking. If we take a close look at the Strickland case, we know that this court said that armed robbery requires actual removal of the item from the victim's possession, complete dispossession. But what the majority below in defense counsel are trying to do now is avoid that absurd situation where the victim in the vehicle has to be removed. On that point, does Mr. Collins kidnap, the fact that you can charge kidnapping, does that defeat your absurdity argument? No, it doesn't, because I don't think we can charge kidnapping and proof kidnapping in every carjacking case and every vehicular hijacking case. And Illinois is not like Indiana. Indiana has a relationship between their carjacking statute and their kidnapping statute. In Indiana, the carjacking statute says the victim has to be out of the car, but if the victim is in the car, it's a kidnapping. Their kidnapping statute actually has one of the elements, and one of the ways to prove it is during a carjacking the victim remains in the car. We don't have that. So there is that absurd absence of a serious offense describing the conduct here if the majority and defendant are correct. And if the majority and defendant can't accept Strickland wholesale, there's an implicit understanding that maybe Strickland shouldn't control in this case. And frankly, the interpretation about the victim maybe being in the car, just not behind the wheel, is an absurd distinction that is not supported by the text of either Strickland and armed robbery jurisprudence or even the text of the vehicular hijacking statute. The vehicular hijacking statute doesn't define how an offender is supposed to take a vehicle. The implicit understanding is one can take a vehicle by hijacking it. And certainly the statute, the vehicular hijacking statute, doesn't make a distinction between on one hand an offender taking the wheel or on another hand the offender keeping the victim at the wheel at gunpoint or at knife point as in this case. Short of some express indication by the legislature that this is a relevant distinction, the appellate majority and defendant shouldn't have manufactured limitations in the vehicular hijacking statute that are frankly inconsistent with the purpose and the title of this new vehicular hijacking crime. And it truly is our position that the word takes when we're referring to a vehicle includes the act of hijacking. And that's precisely why the legislature removed vehicles from the armed robbery statute and put them in this new statute because vehicles can be taken from a victim by taking the vehicle away or simply by forcing the victim to drive under force or threat of force. There's nothing in the vehicular hijacking statute that prevents this interpretation. The only thing preventing this interpretation is the armed robbery common law jurisprudence and it's our position that that armed robbery common law jurisprudence shouldn't be placed to narrow the vehicular hijacking statute. For these reasons and those expressed in our brief, we would ask that this court reverse the appellate majority's construction of the vehicular hijacking statute. Thank you. Thank you. Mr. Harris, I want to apologize. I think I misspoke and called you Mr. Collins. Thank you. Case number 120011, People v. Reese, will be taken under advisement as agenda number two. Mr. Harris, Ms. Collins, thank you for your argument. You are excused at this time.